**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

|  |  |  |
|---|---|---|
| KRISTIN N. BARTUNEK, | : | Case No. 3:16-cv-326 |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| vs. | : | Magistrate Judge Sharon L. Ovington |
|  | : | (by full consent of the parties) |
|  | : |  |
| NANCY A. BERRYHILL, | : |  |
| COMMISSIONER OF THE SOCIAL | : |  |
| SECURITY ADMINISTRATION, | : |  |
|  | : |  |
| Defendant. | : |  |

---

**DECISION AND ENTRY**

---

## I.       Introduction

Plaintiff Kristin N. Bartunek brings this case challenging the Social Security

Administration's denial of her application for period of disability and Disability

Insurance Benefits.  She applied for benefits on July 2, 2013, asserting that she could no

longer work a substantial paid job.  Administrative Law Judge (ALJ) Emily Ruth Statum

concluded that she was not eligible for benefits because she is not under a "disability" as

defined in the Social Security Act.

The case is before the Court upon Plaintiff's Amended Statement of Errors (Doc.

#16), the Commissioner's Memorandum in Opposition (Doc. #13), Plaintiff's Reply

(Doc. #15), and the administrative record (Doc. #7).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Statum's non-disability decision.

## II.    Background

Plaintiff asserts that she has been under a "disability" since December 29, 2012. She was thirty-five years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). She has a high school education. *See id.* § 404.1564(b)(4).

### A.    Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Statum that she cannot work because of severe pain:

> I have nerve pain in my leg -- left leg and both arms. It's a shooting, stabbing, sharp pain. I also have pain in my lower -- mid to lower spine that's very sharp pain. My left foot, a lot of the times it feels like the bones are broken when I try to walk on it, and my left thigh gets real bad, sharp pains like someone's stabbing a knife in and pulling down. … My hip, every time I try to take off my pants or go to the bathroom or go to sit down or roll over in bed, it's a very sharp pain. I also get the pain in my left butt cheek and my whole left leg is numb. It doesn't have full feeling in it. My left arm has now gotten a lot of muscle weakness as well and I have a difficult time holding things in my left arm. When I'm driving, I have bad joint pain in both hands and nerve pain in my wrists and fingers, so I switch off hands because holding onto the wheel for too long hurts, so I have to switch hands when I'm driving.

(Doc. #7, *PageID* #s 806-07).

2

On a scale from one to ten, Plaintiff stated that her lower back pain is "[a]bout a seven" on a daily basis and her left leg pain is eight. *Id.* at 808-09. She experiences the greatest pain relief when she is lying down and thus, spends a lot of time lying down. *Id.* at 810. Her pain is worst in the morning and at night. *Id.* at 811.

In 2012 or 2013, Plaintiff participated in a spinal cord simulator trial and it made her back pain worse. *Id.* "The next move they want to do is implant a pain pump." *Id.* at 812. At the time of the hearing, Plaintiff was taking medication for pain. *Id.* Her treating pain specialist, Dr. Dannini, prescribes Percocet, amitriptyline, and Flexeril. *Id.* Dr. Rudd prescribes Cymbalta. *Id.* She experiences significant side effects: "Cymbalta, I have dizziness a lot when I stand and I'm also extremely tired constantly…. Flexeril … also makes me really tired and the Percocet keeps me awake and also gives me … a little bit of nausea, and then the [amitriptyline], it puts me to sleep." *Id.* at 813. Plaintiff's medication "take[s] the edge off" but does not take all of her symptoms away. *Id.* at 821.

Plaintiff has very restless sleep because she is constantly moving and, "[e]very time I move in bed, my hip hurts really bad, and my feet … get very, very cold, like they're in an ice box, and so that kind of keeps me awake, and then the pain in my toes and in my leg …." *Id.* at 811.

The problems in her hands started almost one year before the hearing. *Id.* at 809. She has constant numbness in her hands and left arm, constant pain in her knuckles, and intermittent nerve pain. *Id.* at 817. As a result, she has "difficulties holding anything for too long of a period, especially smaller things like pens and even [helping my son] get

dressed sometimes can be a hassle." *Id.* at 809. The heaviest thing she can lift is a pot. *Id.* at 817.

Plaintiff's leg pain improved after surgeries in 2009. *Id.* at 814. But, in 2011, she was involved in a car accident, and the pain "came back in full force." *Id.* at 814-15. After the accident, she was off work for six months because of the back problems and because she was pregnant. *Id.* at 816. She then attempted to work for a couple months but had to stop because her back pain was so bad. *Id*. At the time, Plaintiff worked as a registered nurse. *Id.* at 805.

Plaintiff lives with her husband and three-year-old son. *Id.* at 804. She has a driver's license and is able to drive. Her mom helps her take care of her son on days that he is not in school. *Id.* at 809. "I'm either at her house or she's at my house." *Id.* at 810. Her mom cooks for him, picks him up, puts him in the car seat, and anything else that requires lifting. *Id*. When Plaintiff is unable to get up and do anything, her mom takes complete care of him. *Id*.

Plaintiff described her daily activities:

> [I]t depends on the days that I have my son in school. I wake
> up -- well, he wakes up and comes in my bed and I put the
> TV on for him until I can physically feel well enough to get
> out of bed, which is about an hour after he comes in, and then
> we go downstairs and I make him oatmeal or cereal for
> breakfast and then we lay down on his little couch and watch
> his cartoons while he eats his breakfast, and then I get his
> clothes for him and he now can put them on himself, so he
> puts on his clothes. I help him with his shoes and then I take
> him to school and then I generally come home and lay in the
> recliner or in my bed and watch TV or that's pretty much it,
> watch TV. And then on the days that I do have him and he's
> not in school, it's the same morning routine and I will either

4

> take him down to my parents' house or my mom will come
> up around 9:30 or 10:00 in the morning to help me with him,
> and she will usually take him outside and we have a swing set
> out back for him and they'll play and I'll just watch. And I
> take naps generally.

*Id.* at 819-20. Her mom stays until around 6:30 p.m., when her husband gets home.

*Id.* at 820. When Plaintiff does not have her son, she sleeps during the day—usually

from whenever she falls asleep in the morning until five o'clock. *Id.* at 815.

Plaintiff is unable to cook meals that require standing for over ten minutes. *Id.* at

815. Her husband usually cooks and does most of the grocery shopping. *Id.* at 815-17.

Plaintiff is not able to clean or do laundry. *Id.* at 820-21. Generally, her mom or her

husband's mom do both. *Id.* Plaintiff has a computer she uses for email and Facebook.

*Id.* at 821. She has to use a toilet chair because of the severe pain in her back. *Id.* at 815.

And, because Plaintiff is unable to lift her son into his car seat, she puts a stool in the car

so he can climb into the car and then into the car seat. *Id.* at 817.

Plaintiff estimated that she can sit for ten to fifteen minutes before she has to stand

up because of pain. *Id.* at 808. She can stand in one place for five to ten minutes before

she has to sit down. *Id.* But, she usually has to put her weight on her right side and she

sometimes leans up against something. *Id.* She can walk for fifteen to thirty minutes. *Id.*

## B. Medical Opinions

### i. Richard Donnini, D.O.

Plaintiff's treating pain specialist, Dr. Donnini completed a functional capacity

evaluation on September 22, 2014. *Id.* at 1484-90. He began treating Plaintiff on

February 11, 2014 and sees her monthly. *Id.* at 1484. He diagnosed postlaminectomy

syndrome, lumbar region; lumbosacral neuritis, not otherwise specified; and other chronic pain. *Id.* He indicated that Plaintiff's symptoms include low back pain with numbness and tingling in her left hip, thigh, lower leg, and foot. *Id.* She also exhibits a significantly reduced range of motion, positive straight leg raise, and tenderness. *Id.* at 1485. Dr. Donnini opined Plaintiff's condition and symptoms are severe and would frequently interfere with her attention and concentration. *Id.* at 1486. She is prescribed Cymbalta, amitriptyline, and Percocet, and her side effects include sedation and reduced mental and physical alertness/function. *Id.*

Dr. Donnini further opined Plaintiff could sit for twenty minutes at one time for a total of about four hours; stand for ten minutes at one time for a total of about four hours; and walk for thirty minutes at one time for a total of less than two hours. *Id.* at 1487. Plaintiff could not "get through an 8-hour day (with normal breaks) on a sustained basis without lying down during the working day[.]" *Id.* at 1488. She can occasionally lift, carry, push, and pull less than ten pounds. *Id.* She can occasionally reach and rarely bend, squat, crawl, climb, stoop, crouch, or kneel. *Id.* at 1489. She cannot tolerate exposure to unprotected heights or being around moving machinery. *Id.* She can occasionally tolerate driving automotive equipment and exposure to marked temperature changes, dust, fumes, gases, and noise. *Id.* at 1489-90. Plaintiff's conditions, impairments, or treatment would cause her to be absent from work three or more times per month. *Id.* at 1490.

Dr. Donnini also added a summary of his disability evaluation in his treatment notes: "Stated to a degree of medical certainty, and based upon her physical

6

examination[,] review of records[,] and her history, she is not capable of sustained remunerative employment. I believe that she could probably work intermittently but could not sustain an eight hour day five day week regimen without missing excessive days of work and having difficulty completing a full day of work on a regular basis." *Id.* at 1482-83.

ii. **Amol Soin, M.D.**

Dr. Soin, a pain specialist, only treated Plaintiff twice, December 20, 2013 and January 7, 2014. *Id.* at 1290, 1286. Dr. Soin did not complete a specific assessment but did provide his opinion in his treatment notes. He diagnosed thoracic/lumbrosacral neuritis/radiculitis; postlaminectomy syndrome lumbar region; and lumbosacral spondylosis without myelopathy. *Id.* at 1292. His physical exam of Plaintiff's lower lumbar spine revealed pain to palpation. *Id.* Further, "Facet loading was carried out whereby pressure was placed on the paravertebral segments in the lower lumbar spine while the patient twisted and it elicited pain. Finger to floor flexion with the knee extended was less than 90 degrees and limited by pain and stiffness, extension to 30 degrees [and lateral bending to 25 degrees] was limited due to pain …." *Id.* And, Plaintiff's straight leg raise was positive and elicited ipsilateral pain in the lower lumbar spine. *Id.* He noted an EMG revealed chronic left L5 radiculopathy, and she had symptoms of radiculopathy with pain traveling down her leg during his exam. *Id.*.

Dr. Soin opined, Plaintiff "suffers from chronic pain that is causing psychological[,] social, and physical impairment. [Plaintiff] has failed conservative care including OTC medications, NSAIDS, home therapy, home exercise, lifestyle changes,

7

… and treatment by other [practitioners].  Radiological findings and History and Physical [are] consistent with the listed diagnosis and confirm the pathology which requires intervention.  [Plaintiff] has filled out a pain diary to assess the perceived functional improvement and VAS pain scores through the intervention phase." *Id.* at 1293.  He found, "This pain we are treating is suggestive of radiculopathy as documented by axial location with radiculopathy and documented suspicion [of] nerve root irritation causing the radiculopathy." *Id.*

## III.    Standard of Review

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1).  The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope.  It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon.  42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record

contains evidence contrary to those factual findings.  *Gentry v. Comm'r of Soc. Sec.*, 741

F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.

2007).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard

is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to

support a conclusion.'"  *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc.

Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a

scintilla of evidence but less than a preponderance …."  *Rogers*, 486 F.3d at 241

(citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal

criteria—may result in reversal even when the record contains substantial evidence

supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647,

651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial

evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to

follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting in part

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47

(6th Cir. 2004)).

## IV.    The ALJ's Decision

As noted previously, it fell to ALJ Statum to evaluate the evidence connected to

Plaintiff's application for benefits.  She did so by considering each of the five sequential

steps set forth in the Social Security Regulations.  *See* 20 C.F.R. § 404.1520.  She

reached the following main conclusions:

Step 1:     Plaintiff has not engaged in substantial gainful employment since December 29, 2012.

Step 2:     She has the severe impairments of degenerative disc disease of the lumbosacral spine with residuals of multiple surgeries; sacroiliitis; and asthma.

Step 3:     She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:     Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work … subject to the following limitations:  (1) lift and carry ten pounds occasionally; (2) walk for a total of two hours in an eight-hour workday; (3) sit for six hours in an eight-hour workday; (4) no limitations pushing/pulling; (5) occasionally climbing stairs or ramps; (6) no climbing ladders, ropes, or scaffolds; (7) no greater than occasional balancing, stooping, kneeling, and crouching; (8) no crawling; (9) no concentrated exposure to extremes of heat, humidity, fumes, odors, dusts, gases, or poor ventilation; and (10) simple, unskilled work."

Step 4:     She is unable to perform any of her past relevant work.

Step 5:     She could perform a significant number of jobs that exist in the national economy.

(Doc. #7, *PageID* #s 781-91).  These main findings led the ALJ to ultimately conclude

that Plaintiff was not under a benefits-qualifying disability.  *Id.* at 791.

## V.     <u>Discussion</u>

Plaintiff contends that the ALJ failed to properly evaluate the treating physicians'

opinions, her pain complaints, and her credibility.  The Commissioner maintains that

substantial evidence supports the ALJ's consideration of the opinions of record,

Plaintiff's subjective complaints, and her credibility.

### A. Medical Opinions

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to

any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

In the present case, ALJ Statum observed that Dr. Donnini, Plaintiff's treating pain specialist, opined that Plaintiff "would be unable to engage in work activity on a regular and continuing basis." (Doc. #7, *PageID* #787) (citing Exhibit 18F). She then noted, "The ultimate conclusion as to whether an individual satisfies the statutory definition of 'disability' is an issue that is reserved to the Commissioner of Social Security." *Id.* (citing Soc. Sec. R. 96-5p, 1996 WL 374183 (Soc. Sec. Admin. July 2, 1996); 20 C.F.R. § 404.1527). However, the fact that Dr. Donnini expressed an opinion on the ultimate issue of Plaintiff's disability status is not a valid reason to discount or ignore it. "The pertinent regulation says that 'a statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.' That's not the same thing as saying that such a statement is improper and therefore to be ignored...." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (internal citation omitted); *see Kalmbach v. Comm'r of Soc. Sec.*, No. 09-2076, 409 F. App'x 852, 861 (6th Cir. 2011) ("the fact that the ultimate determination of disability, *per se,* is reserved to the Commissioner, 20 C.F.R. § 404.1527(e) [§ 416.927(d)(1)], did not supply the ALJ with a legitimate basis to disregard the physicians' [opinions].").

ALJ Statum concluded that Dr. Donnini's opinion was not entitled to controlling or deferential weight and, instead, assigned it "little weight." (Doc. #7, *PageID* #s 787-88). She acknowledged the first condition of the treating physician rule, finding that "Dr.

Donnini's medical opinion is not supported by the medical record …." *Id.* at 788.

However, she provides no further explanation or citation to the record.

ALJ Statum also addressed the second condition of the treating physician rule,

finding that Dr. Donnini's opinion was "inconsistent with the physician's treatment notes,

which consistently indicate that [Plaintiff] experienced good pain relief from her pain

medications, as well as increased activity." *Id.* at 787 (citations omitted). Further, "it is

also inconsistent with the record that reveals unremarkable findings throughout." *Id.* at

787-88 (citations omitted).

The ALJ's conclusion that Dr. Donnini's treatment notes are inconsistent with his

opinion is not supported by substantial evidence. The Social Security Administration

defines "not inconsistent:" "This is a term used to indicate that a well-supported treating

source medical opinion need not be supported directly by all of the other evidence (i.e., it

does not have to be consistent with all the other evidence) as long as there is no other

substantial evidence in the case record that contradicts or conflicts with the opinion."

Soc. Sec. R. 96-2p, 1996 WL 374188, at *3. Dr. Donnini's treatment notes do not

conflict with or contradict his opinion. To the contrary, he consistently documents

objective evidence of tenderness, pain, and limited range of motion in Plaintiff's lumbar

spine. For example, in February 2014, upon exam of her lumbar spine, he observed,

"Accentuation of the normal lordosis, moderate. Tenderness in midline entire lumbar

spine – moderate. … Moderate limitation of range of motion with pain." (Doc. #7,

*PageID* #1455) Further, he noted, "light touch in the lower extremities on the left

hypoesthesia in a L5 distribution, 50% of normal." *Id.* at 1455. Dr. Donnini noted in

April 2014, "B/L [sacroiliac (SI)] joint tenderness. Gaenslen's test pain in SI joint bilateral." *Id.* at 1446.

Dr. Donnini further explains in his notes that Plaintiff's "treatment history is very extensive and she's tried multiple different treatment options, including medications, injections, therapy and massage." *Id.* at 1429. He administered several different treatment options—all with limited success. For example, he notes on June 4, 2014 that Plaintiff had two left sacroiliac joint injections. *Id.* at 1433. The first was incredibly successful and reduced her left hip pain 100%. *Id.* Unfortunately, the second provided no relief. *Id.* Plaintiff also underwent a lumbar spinal cord stimulator trial in May 2014. *Id.* at 1436. It made her pain worse. *Id.* at 1433. Similarly, in July 2014, Plaintiff reported that her pain had increased and she was not sleeping as well. *Id.* at 1429. Although Flexeril helped her sleep, she did not like taking it every night. *Id.*

ALJ Statum's conclusion that Dr. Donnini's opinion is "inconsistent with the record that reveals unremarkable findings ..." is similarly unsupported. *Id.* at 787-88 (citations omitted). The ALJ's summary of "unremarkable findings" come largely from the notes of Plaintiff's primary-care physician, Dr. Rupp. However, Dr. Rupp's notes contain repeated reports of back pain as well as additional medical problems. For example, on June 10, 2013, Dr. Rupp noted that Plaintiff's left anterior superior iliac spine was painful to palpation. *Id.* at 1321. Perhaps because Dr. Rupp is not a specialist, he referred Plaintiff to physical medicine rehab. *Id.* He noted in September 2012 that Plaintiff reported worsening back pain and that she sees Dr. Shababian for treatment. *Id.* at 1336. The majority of his notes from that day, however, focus on treatment of

14

Plaintiff's GERD. *Id.* at 1336-38. Similarly, in May 2013, Dr. Rupp indicated that

Plaintiff has back pain, is on chronic narcotics, and sees a neurosurgeon for treatment.

*Id.* at 1324. Again, in addition to back pain, Dr. Rupp refers to treatment of GERD and

depression. *Id.* at 1323-25.

ALJ's Statum's selective reading of the records constitutes error: "[A]

substantiality of evidence evaluation does not permit a selective reading of the record.

'Substantiality of the evidence must be based upon the record taken as a whole.

Substantial evidence is not simply some evidence, or even a great deal of evidence.

Rather, the substantiality of evidence must take into account whatever in the record fairly

detracts from its weight.'" *Brooks v. Comm'r of Soc. Sec*., 531 F. App'x 636, 641 (6th

Cir. 2013) (quoting, in part, *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984)

(internal citations and quotation marks omitted).

Further, ALJ Statum ignores that Dr. Soin's treatment notes support Dr. Donnini's

opinion. For example, he noted that palpation of her thoracic spine revealed paraspinal

muscle tenderness. (Doc. #7, *PageID* #1292). And, his physical exam of Plaintiff's

lower lumbar spine revealed pain to palpation. *Id.* Further, "Facet loading was carried

out whereby pressure was placed on the paravertebral segments in the lower lumbar spine

while the patient twisted and it elicited pain. Finger to floor flexion with the knee

extended was less than 90 degrees and limited by pain and stiffness, extension to 30

degrees [and lateral bending to 25 degrees] was limited due to pain …." *Id.* And,

Plaintiff's straight leg raise was positive and elicited ipsilateral pain in the lower lumbar

spine. *Id.* She also had symptoms of radiculopathy with pain traveling down the lower

extremity during the physical exam, and an EMG revealed chronic left L5 radiculopathy.

*Id.*

However, even if Dr. Donnini's opinion is not entitled to controlling weight, ALJ Statum's review is not complete:  If a treating physician's opinion does not meet either condition of the treating physician rule, it "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927."  Soc. Sec. R. 96-2p, 1996 WL 374188, at *4.

ALJ Statum failed to acknowledge any of the factors.  For example, she did not recognize Dr. Donnini's treatment relationship with Plaintiff.  *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").  Dr. Donnini began treating Plaintiff in February 2014, and he saw Plaintiff once or twice a month until he provided his opinion in September 2014.  (Doc. #7, *PageID* #1453, 1490); *see* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").  As explained above, Dr. Donnini's treatment notes and Dr. Soin's notes are

consistent with his opinion.  *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more

consistent a medical opinion is with the record as a whole, the more weight we will give

to that medical opinion.").  Additionally, ALJ Statum failed to recognize that Dr. Donnini

is a pain specialist.  *See id.* § 404.1527(c)(5) ("We generally give more weight to the

medical opinion of a specialist about medical issues related to his or her area of specialty

than to the medical opinion of a source who is not a specialist.").

By ignoring the factors, ALJ Statum did not apply the correct legal criteria and

failed to give Dr. Donnini the deference he deserved as a treating physician.  *See Rogers*,

486 F.3d at 242 (citation omitted) ("[I]n all cases there remains a presumption, albeit a

rebuttable one, that the opinion of a treating physician is entitled to great deference, its

non-controlling status notwithstanding.").  This constitutes error.  *See Bowen*, 478 F.3d at

746 ("[A] decision of the Commissioner will not be upheld where the SSA fails to follow

its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right." (citing *Wilson,* 378 F.3d at 546-47)).

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[1]

**B.      Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial

evidence or when the ALJ failed to follow the Administration's own regulations and that

shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial

right.  *Bowen*, 478 F.3d at 746.  Remand may be warranted when the ALJ failed to

---

[1] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of
Plaintiff's other challenges to the ALJ's decision is unwarranted.

provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*,

378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's

opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the

plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific

reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see*

*Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm,

modify, or reverse the Commissioner's decision "with or without remanding the cause for

rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand

under sentence four may result in the need for further proceedings or an immediate award

of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th

Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or

where the evidence of disability is strong while contrary evidence is lacking. *Faucher v.*

*Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the

evidence of disability is not overwhelming and the evidence of disability is not strong

while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding

this case to the Social Security Administration pursuant to sentence four of §405(g) due

to the problems discussed above. On remand, the ALJ should be directed to evaluate the

evidence of record, including the medical source opinions, under the applicable legal

criteria mandated by the Commissioner's Regulations and Rulings and by case law; and

to evaluate Plaintiff's disability claim under the required five-step sequential analysis to

determine anew whether Plaintiff was under a disability and whether her application for

Disability Insurance Benefits should be granted.

## IT IS THEREFORE ORDERED THAT:

1. The Commissioner's non-disability finding is vacated;

2. No finding is made as to whether Plaintiff Kristin N. Bartunek was under a "disability" within the meaning of the Social Security Act;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case is terminated on the Court's docket.

Date: August 24, 2017                    *s/Sharon L. Ovington*
                                         Sharon L. Ovington
                                         United States Magistrate Judge